**NATIONAL FARM LINES, INC.**
v.
**LOUISIANA PUBLIC SERVICE COMMISSION.**
Civ. A. No. 76–327.
United States District Court,
M. D. Louisiana.
Aug. 26, 1977.

John R. Tharp, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., Harrison W. Hertzberg, David S. Koslow, Don Erik Franzen, Hertzberg, Kaplan & Koslow, Los Angeles, Cal., for plaintiff.

Jeff McHugh David, Louisiana Public Service Commission, Baton Rouge, La., for defendant.

**364**

E. GORDON WEST, District Judge:

This case involves a question as to the validity of a General Order issued by the Louisiana Public Service Commission (LPSC), defining the conditions under which agricultural cooperative associations, as defined in the Agricultural Marketing Act of 1929, 12 U.S.C. § 1141, may lease drivers and vehicles from others and still be entitled to the exemption from regulation as provided in Part II of the Interstate Commerce Act, sometimes referred to as the "Motor Carrier Act," 49 U.S.C. § 303(b)(5). That section provides, in pertinent part, that the regulations provided for in the Motor Carriers Act shall not apply to:

"(5) motor vehicles controlled and operated by a cooperative association as defined in the Agricultural Marketing Act, approved June 15, 1929, as amended, or by a federation of such cooperative associations, if such federation possesses no greater powers or purposes than cooperative associations so defined, but any interstate transportation performed by such a cooperative association or federation of cooperative associations for nonmembers who are neither farmers, cooperative associations, nor federations thereof for compensation, except transportation otherwise exempt under this chapter, shall be limited to that which is incidental to its primary transportation operation and necessary for its effective performance and shall in no event exceed 15 per centum of its total interstate transportation services in any fiscal year, measured in terms of tonnage: * * *."

While the Motor Carrier Act of 1935, Part II of the Interstate Commerce Act, 49 U.S.C. § 301, et seq., vests the Interstate Commerce Commission (ICC) with broad regulatory authority over interstate motor carriage, nevertheless the passage of that Act by Congress did not abridge the authority of States to regulate intrastate motor carriers operating over their highways, nor did it completely take away the right of the States to exercise certain powers over interstate motor carriers operating within their borders. See 49 U.S.C. §§ 302(b)(1) and 302(b)(2). Under Section 202(b)(2) of the Act, 49 U.S.C. § 302(b)(2), and the ICC regulations promulgated thereunder, 49 C.F.R. Part 1023, et seq., the States are empowered to procure evidence of the lawfulness of the interstate operations conducted within their borders by requiring carriers so operating to register their ICC–issued certificates and permits, and to register and identify the vehicles operating under such authorities. The State of Louisiana, by statute, authorized the LPSC to enact such rules and modes of procedure, enforcement and penalties as may be necessary to implement those federal provisions. Pursuant to this statute, the LPSC did issue a general order on September 7, 1972, requiring registration of a motor carrier's interstate authority or statutory authority for exempt operators. Then, on or about July 13, 1976, the LPCS promulgated an amendment to its September 7 General Order which provides, in part, as follows:

"Co-operative associations or federations as defined in the Agricultural Marketing Act may not, under any arrangement, farm out their registrations with this Commission to other persons. Drivers of the vehicles leased by such co-operative associations or federations must be bona-fide employees of such co-operative organizations, and the vehicle under the sole and complete direction, control, and responsibility of the association, otherwise, the operation of the vehicle will be deemed that of the driver's actual employer rather than that of the co-operative association or federation. The lease, and the accompanying documents related thereto, shall reflect fully the total and ultimate character of the arrangement. "A copy of the lease shall accompany the vehicle operated under these provisions."

The dispute involved in this case revolves around the question of whether or not the provision in the LPSC Amended General Order requiring drivers of vehicles leased by cooperative associations to be "bona-fide employees of such co-operative organizations" is in conflict with, or an unauthorized extension of the provision of § 203(b)(5) of the Motor Carriers Act, 49 U.S.C.

§ 303(b)(5), wherein the requirement for exemption is that the motor vehicles involved must be "controlled and operated by a cooperative association."

The facts in this case are not in dispute. On September 4, 1976 a truck driven by Bernard Loftus, and owned by Oakley D. Terrell, was stopped on an interstate highway by an inspector of the Interstate Section, Transportation Division of the Louisiana Public Service Commission. Loftus was requested to produce proof that (1) his vehicle was operated under a Certificate of Public Convenience and Necessity issued by the ICC, and (2) that the Certificate was registered with the Commission as required by LSA–R.S. 45:163 and the Commission's General Order of September 7, 1972. Neither Loftus, Terrell, or National Farm Lines, Inc. possessed such a certificate. Instead, Loftus produced a copy of the lease agreement between Terrell and National and claimed that his vehicle operated under the exemption contained in § 203(b)(5) of the Motor Carriers Act, 49 U.S.C. § 303(b)(5). The terms of the lease which Loftus produced specified that the detained vehicle was leased by National for a period of one year in return for 80 per cent of the gross revenue received by National from the use of the truck. After inspecting the lease and filling out the Commission's standard form entitled "Interstate Questionnaire," the inspector ticketed Loftus for transporting non-exempt commodities in interstate commerce without having registered a Certificate of Public Convenience and Necessity with the Commission.

For the purposes of this suit, it has been admitted by all parties that National Farm Lines, Inc. is an agricultural cooperative as contemplated by the Act and that it is engaged in servicing the motor transportation needs of its member-farmers and of certain non-members in interstate commerce, as permitted by and in accordance with the exemption from Interstate Commerce Commission regulations contained in 49 U.S.C. § 303(b)(5). It is further stipulated, for the purposes of this suit only, that National has complied with all the statutory pre-requisites, including the filing of a Notice of Intent to transport freight for non-members in interstate commerce set forth in § 303(b)(5). The Interstate Questionnaire filled out by the arresting officer and signed by the driver, Bernard Loftus, shows that the truck involved was owned by Oakley Terrell, who pays the driver's withholding tax, social security tax, and workman's compensation premiums. It further states that National Farm Lines arranges loads for the driver.

After the driver of the truck was stopped and arrested as hereinbefore set forth, National Farm Lines, Inc. filed this suit seeking a temporary restraining order restraining LPSC from instituting or continuing any action against the plaintiff for alleged violation of the LPSC's order that drivers of vehicles leased by a cooperative association must be "bona-fide employees" of the cooperative association. They further seek, in this suit, a permanent injunction and a declaratory judgment to the effect that the LPSC's requirement in its General Order that drivers of vehicles leased by cooperatives be "bona-fide employees" is an unauthorized and illegal extension of the Interstate Commerce Commission's requirement that the vehicle involved must be under the "control and operation" of the agricultural cooperative. Secondly, plaintiff seeks, in the alternative, the convening of a three judge court to declare the LPSC's General Order unconstitutional as violative of the Fourteenth Amendment to the United States Constitution.

When the suit was filed this Court issued a temporary restraining order, and by agreement of counsel, the matter was submitted on the record and on briefs filed or to be filed by all parties. This Court has been favored with extremely exhaustive briefs not only by the parties to this suit but by several others appearing as amicus curiae. Now, after due consideration hereof, it is the opinion of this Court that the temporary restraining order previously issued herein should be rescinded and recalled, and that plaintiff's demand for injunctive relief and alternatively, for the convening of a three judge court, should be denied.

It is the conclusion of this Court that there is no inherent conflict between the provision of the General Order issued by the Louisiana Public Service Commission requiring the drivers of leased vehicles to be bona-fide employees of the cooperative association and the provision of the Interstate Commerce regulations and the federal statute requiring that the motor vehicle involved be "controlled and operated" by the cooperative association. These very same arguments in cases almost identical to this one have been before the Federal Courts before. In the case of *Agricultural Transportation Association of Texas v. King, et al*, 349 F.2d 873 (1965), the Fifth Circuit Court of Appeals dealt at length with this problem. The history, background, and policy matters concerned are exhaustively treated in that opinion, and it would serve no useful purpose to reiterate them herein. Judge Brown, speaking for the Court in *King*, stated that "the important question is *who*, within federal machinery in the first instance, should make these delicate judgments." He concluded that "On this score, we think the case as it now comes to us calls for the exercise of primary jurisdiction by the ICC as a condition precedent to any future relief." As a result of that conclusion, that case was remanded to the District Court with instructions to refer it back to the Interstate Commerce Commission for its consideration. As a result of that remand, the ICC's ruling was made in *Agricultural Transportation Association of Texas v. Florida Public Service Commission*, 108 M.C.C. 96 (1968). In that case, the Interstate Commerce Commission held:

" * * * we conclude that an agricultural cooperative association may not employ owner operators, except where the leasing of vehicles and hiring of drivers are handled in a manner separate and distinct from one another, using the leased equipment as if it were owned and treating the drivers as employees. However, in instances where the owner of the vehicle is employed by the cooperative as a driver, without more, there is a presumption that the vehicle is not controlled and operated by the cooperative

within the meaning of that section. Compare *Oklahoma Furniture Manufacturing Co.—Investigation of Operations*, 79 M.C.C. 403, 411 (1959), affirmed *Drum case, supra*. The presumption is not overcome, absent other factors, in instances where the lease arrangement is based on a percentage of gross revenue." *Agricultural Transportation Association of Texas v. Florida Public Service Commission*, supra.

This response by the ICC to the Court of Appeals remand does not in any way indicate that a requirement that a driver of a leased vehicle be a "bona-fide employee" of the agricultural cooperative is in any way an impermissible extension of the federal regulation that the vehicle be "controlled and operated" by the agricultural cooperative.

This was not the first time that the ICC had addressed this problem. On a prior occasion, in *Machine Haulers Association v. Agricultural Commodities Service*, 86 M.C.C. 5 (1961), the ICC faced the same problem, with the same results. In the course of that opinion it said:

"[w]hat standards are to be utilized in determining whether * * * (motor vehicles leased by agricultural cooperatives) * * * are, in fact, 'controlled and operated' by the co-operative association claiming exemption?"

They resolved that question by finding that:

" * * * in order to be controlled and operated solely by the cooperative association within the meaning of the exemption, we believe that the motor vehicles by which the transportation is performed must be either owned by the cooperative itself or must be in the lawful possession thereof and be operated and used in the same manner as if owned by the association (as it would be, for example, if operated pursuant to a long term lease). In addition, and although the statute itself speaks only in terms of control and operation of the motor vehicles, it is obvious that absent a direct, bona fide employer-employee relationship between the coop-

erative and the drivers, the association cannot, in fact, *exclusively* control and direct the operation of the motor vehicles. Stated differently, in order to qualify for the partial exemption of Section 203(b)(5), the co-operative association alone must control and direct the two instrumentalities of commerce: the equipment by which the transportation is accomplished, and the driver thereof." *Machine Haulers Association v. Agricultural Commodities Service,* supra.

As stated by Judge Brown in the *King* case, as the agency charged with the enforcement of the Interstate Commerce Act, the ICC's interpretation of matters of this kind is entitled to great weight. See also *Columbia Broadcasting System, Inc. v. Democratic National Committee,* 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973); *Usery v. Tamiami Trail Tours,* 531 F.2d 224 (CA 5–1976).

It is therefore the conclusion of this Court that the requirement of the LPSC's General Order is neither in conflict with nor an impermissible extension of the provisions of 49 U.S.C. § 303(b)(5). Having thus held, it follows that plaintiff's alternative demand for the convening of a three judge court must also be denied.

This Court wishes to make it clear that it is stating no opinion as to whether or not Louisiana law was violated by the plaintiff or by the driver of the vehicle involved in this case. Whether or not the driver of the vehicle involved was a "bona-fide employee" of an agricultural cooperative is a matter to be determined in a proper State forum. This Court simply holds that the requirements of the LPSC's General Order involved in this case are neither in conflict with nor impermissible extensions of the provisions of 49 U.S.C. § 303(b)(5). Therefore, judgment will be entered in this case recalling and setting aside the temporary restraining order previously issued herein, denying plaintiff's demand for injunctive relief, and denying plaintiff's alternative demand for the convening of a statutory three judge court in this case.